**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BBC STUDIOS DISTRIBUTION LTD, | |
| Plaintiff, | Case No. 22-cv-02784 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

**COMPLAINT**

Plaintiff BBC Studios Distribution Ltd ("Plaintiff"), under agreement with Ludo Studio Pty Ltd, has full and exclusive license to use, enforce, and sublicense the trademarks and copyrights of Ludo Studio Pty Ltd in the United States, including the registered BLUEY trademarks and Bluey copyrighted design. BBC Studios Distribution Ltd and Ludo Studio Pty Ltd are hereinafter referred to together or individually as "Bluey". Plaintiff hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of the federally registered BLUEY trademarks and/or unauthorized copies of the federally registered Bluey copyrighted design (collectively, the "Unauthorized Bluey Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3.    This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale Unauthorized Bluey Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Bluey Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of the registered BLUEY trademarks and infringement of the registered Bluey copyrighted design, as well as to protect unknowing consumers from purchasing Unauthorized Bluey Products over the

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of the valuable BLUEY trademarks and infringement of the Bluey copyrighted design as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Plaintiff BBC Studios Distribution Ltd is a wholly owned subsidiary of the British Broadcasting Corporation, having its principal place of business in the United Kingdom.

5. Plaintiff is a global studio that specializes in the development, acquisition, production, financing, distribution, and sale of entertainment content. Plaintiff's diversified expertise spans across film, television and music production and sales, family programming, merchandising, licensing, and digital content.

6. BLUEY is an animated television series created by Joe Brumm in association with Plaintiff and Ludo Studio Pty Ltd, which originally aired in October 2018. Since 2018, three seasons have been aired, and the global phenomenon continues to look bright for Plaintiff's popular blue heeler puppy. BLUEY has won a Logie Award for Most Outstanding Children's Program, as well as an International Emmy Kids Award. Some of the characters and character names made famous by the BLUEY television series are:

| | | | |
|---|---|---|---|
| **Bluey** |  | **Bingo** |  |
| **Bandit** |  | **Chilli** |  |
| **Muffin** |  | **Jack Russell** |  |

| | | | |
|---|---|---|---|
| **Rusty** |  | **Lucky** |  |
| **Mackenzie** |  | **Indy** |  |
| **Honey** |  | **Coco** |  |

| | | | |
|---|---|---|---|
| **Snickers** |  | **Chloe** |  |
| **Judo** |  | **Jean Luc** |  |
| **The Terriers** |  | **Socks** |  |

| | | | |
|---|---|---|---|
| **Missy** |  | **Buddy** |  |
| **Calypso** |  | **Winton** |  |
| **Uncle Stripe** |  | **Aunt Trixie** |  |



7.      In addition to episode DVDs, a variety of licensed Bluey products are available, including video games and other toys such as playsets, figurines, board games, and stuffed toys, household items such as bathroom products, kitchenware, and bed linens, and clothing (collectively, the "Bluey Products").

8.      The Bluey brand has become a global success that resonates with children worldwide, and Bluey Products are among the most recognizable in the world. Bluey Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Target, Kmart, and Wal-Mart.

9.      Long before Defendants' acts described herein, Bluey launched the BLUEY television show and its related line of Bluey Products bearing its now famous BLUEY marks and Bluey copyrighted design.

10.     Bluey has continuously sold products under the BLUEY marks (the "BLUEY Trademarks"). As a result of this use, strong common law trademark rights have amassed in the BLUEY Trademarks. Bluey's use of the marks has also built substantial goodwill in and to the BLUEY Trademarks. The BLUEY Trademarks are famous marks and invaluable assets of

Bluey. Bluey Products typically include at least one of the registered BLUEY Trademarks and/or the Bluey copyrighted design.

11. The BLUEY Trademarks are registered with the United States Patent and Trademark Office as listed below.

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 6,442,598 | *BLUEY* | For: Toys, namely, dolls, plush toys, soft sculpture toys in the shape of animals and imaginary animals, bath toys, action figures, vehicles, and playsets therefor; toy model cars, play balls; playing cards; plastic toys, namely, plastic scale models sold in kit form; toys; developmental toys, namely, infant developmental toys which develop children's fine motor skills and cognitive skills; wheeled toys, namely, toy cars and ride-on toys; toy scooters in class 28. |
| 6,662,122 | BLUEY | For: Non medicated toiletry preparations; non-medicated skin care preparations; cosmetics; non-medicated liquid and bar soaps; shampoos; talcum powder; preparations for use in the bath or shower, namely, bubble bath, bath foam, bath salts, bath oil, shower and hair gel; cosmetic preparations for cleaning the teeth; perfumes; eau de cologne; deodorants for personal use; essential oils in class 3.<br><br>For: Baby diapers; disinfecting wipes; adhesive bandages; food for babies; powdered milk for babies in class 5.<br><br>For: Downloadable data recordings, namely, audio, video, still and moving images and text featuring or relating to an animated character and story for children; |

9

|  |  | downloadable educational and computer game software and mobile apps for children for the purpose of children's entertainment relating to an animated character and story for children; downloadable electronic publications namely books, magazines, e-zines featuring or relating to an animated character and story for children; baby monitors; baby scales in class 9.

For: Jewelry; jewelry boxes; works of art of precious metal; clocks; watches; key chains in class 14.

For: Printed publications, namely, magazines and books featuring or relating to an animated character and story for children; photographs; stationery; paint brushes; posters; postcards; greetings cards; collectable trading cards; printed invitations; diaries; calendars; photograph albums; scrap books; prints; gift bags; gift boxes, gift tags; gift wrap; writing instruments; stickers and transfers; ink stamps; personal organizers; address books; note books; pen and pencil holders; desk mats; paper table mats; folders; paper and cardboard coasters; crayons; sewing and knitting patterns; paper bunting; paper patterns for embroidery; paint trays; canvas for painting; palettes for painters; molds for modelling clays in class 16.

For: Furniture; mirrors; furniture fittings, not of metal; high chairs for babies; infant walkers; chests for toys; picture frames; figurines of wood, wax, plaster and plastic; baby changing mats; mats for infant playpens; sleeping mats in class 20. |
|---|---|---|

| | | |
|---|---|---|
| | | For: Household and kitchen utensils, namely, ladles, spatulas and mixing spoons, kitchen tongs, camping grills, utensils for barbecues, namely, forks, tongs; containers for household use; combs; brushes; cleaning sponges; glassware; mugs; dishes; holiday ornaments, statuettes and figurines of ceramic, china, crystal, glass, earthenware, terra cotta and porcelain; bottles sold empty, insulated bottles and flasks sold empty; glass jars; egg cups; lunch boxes; plastic and leather coasters; serving trays; candlesticks; napkin rings and holders; soap boxes; tooth brushes; boxes of common metal for household use; paper plates and cups in class 21.<br><br>For: Non-alcoholic beverages, namely, fruit beverages, fruit juices, carbonated beverages, and water; smoothies; syrups for beverages in class 32.<br><br>For: Television and radio broadcasting; broadcasting and streaming of video and audio programming via the Internet; transmission, broadcast, and dissemination of audio, video, still and moving images, information, text and data whether in real or delayed time; the provision of online message transmission discussion forums; webcasting and podcasting; communication services, namely, providing electronic transmission of information stored in a database via interactively communicating computer systems in class 38.<br><br>Provision of ongoing television programs and radio programs in the field of children's entertainment; educational services, namely, providing courses of instruction for children |

| | | in the nature of early childhood instruction; providing information in the field of entertainment and education on-line from a computer database or the Internet, namely information related to children's entertainment relating to an animated character and story for children; providing a website featuring blogs and non-downloadable electronic publications in the nature of books, magazines, and articles featuring children's entertainment; organization, production and presentation of sports competitions, sports games, concerts, exhibitions, game shows, quiz shows, theatrical performances, and live performances featuring or relating to children's entertainment in class 41. |
|---|---|---|

12.     The above U.S. registrations for the BLUEY Trademarks are valid, subsisting, and in full force and effect.  The registrations for the BLUEY Trademarks constitute *prima facie* evidence of the marks' validity and of Bluey's exclusive right to use the BLUEY Trademarks pursuant to 15 U.S.C. § 1057 (b).  True and correct copies of the United States Registration Certificates for the above-listed BLUEY Trademarks are attached hereto as **Exhibit 1**.

13.     The BLUEY Trademarks are distinctive when applied to the Bluey Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards.  Whether Plaintiff manufactures the products itself or contracts with others to do so, Plaintiff has ensured that products bearing the BLUEY Trademarks are manufactured to the highest quality standards.

14.     The BLUEY Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The innovative marketing and product designs of the Bluey Products have enabled the Bluey brand to achieve widespread

12

recognition and fame and have made the BLUEY Trademarks some of the most well-known marks in the toy and children's entertainment industries. The widespread fame, outstanding reputation, and significant goodwill associated with the BLUEY television show and brand have made the BLUEY Trademarks invaluable assets of Bluey.

15. Since the initial launch of the Bluey Products, the BLUEY Trademarks have been the subject of substantial and continuous marketing and promotion by Bluey. Bluey has and continues to market and promote the BLUEY Trademarks through traditional print media, the official Bluey website (bluey.tv), social media websites, and point of sale material.

16. Bluey has expended substantial time, money, and other resources in advertising and promoting the BLUEY Trademarks. In fact, Bluey has expended millions of dollars in advertising, promoting and marketing featuring the BLUEY Trademarks. Bluey Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the BLUEY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Bluey. Bluey Products have become among the most popular of their kind in the U.S. and the world. The BLUEY Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the BLUEY Trademarks is of incalculable and inestimable value to Bluey.

17. Genuine Bluey Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Bluey brand.

18. Bluey has registered the Bluey copyrighted design (the "Bluey Copyrighted Design") with the United States Copyright Office under the title "Bluey" (U.S. Copyright Registration No. PA 2-308-864), issued by the Register of Copyrights on August 25, 2021. A

true and correct copy of the U.S. federal copyright registration certificate for the above-referenced Bluey Copyrighted Design is attached hereto as **Exhibit 2**.

19.     Among the exclusive rights granted to Bluey under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Bluey Copyrighted Design to the public.

20.     Since its first publication, the Bluey Copyrighted Design has been used on the Bluey Products and is featured on Bluey's website at bluey.tv.  Bluey Products featuring the Bluey Copyrighted Design are advertised on Bluey's website at bluey.tv.

**The Defendants**

21.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

22.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network.  If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

23.     The success of the Bluey television show and brand have resulted in significant counterfeiting of the BLUEY Trademarks and copying of the Bluey Copyrighted Design. Consequently, Plaintiff has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering Unauthorized Bluey Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Walmart, Wish.com, and DHgate, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to U.S. Customs and Border Protection (CBP), most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online counterfeiters. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared for The Buy Safe America Coalition by John Dunham & Associates (**Exhibit 3**). The bulk of counterfeit products sent to the United States "come from China and its dependent territories," accounting for over 90.6% of all cargo with intellectual property rights (IPR) violations. *Id*. Of the $1.23 billion in total IPR violations intercepted, $1.12 billion was from China. *Id*. Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. *Id*.

24.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce

15

platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186–187.

25. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Unauthorized Bluey Products to residents of Illinois.

26. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via

credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Bluey has not licensed or authorized Defendants to use the BLUEY Trademarks or copy or distribute the Bluey Copyrighted Design, and none of the Defendants are authorized retailers of genuine Bluey Products.

27. Many Defendants also deceive unknowing consumers by using the BLUEY Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Bluey Products. Other e-commerce stores operating under Seller Aliases omit using the BLUEY Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Bluey Products.

28. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

29. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Bluey Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

30. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with

common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Bluey Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Unauthorized Bluey Products were manufactured by and come from a common source and that Defendants are interrelated.

31. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

32. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

33. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Bluey Products in the same transaction,

occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Bluey, have jointly and severally, knowingly and willfully used and continue to use the BLUEY Trademarks and/or copies of the Bluey Copyrighted Design in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Bluey Products into the United States and Illinois over the Internet.

34.     Defendants' unauthorized use of the BLUEY Trademarks and/or copies of the Bluey Copyrighted Design in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Bluey Products, including the sale of Unauthorized Bluey Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

35.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

36.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered BLUEY Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The BLUEY Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Bluey Products offered, sold, or marketed under the BLUEY Trademarks.

37.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the BLUEY Trademarks without Bluey's permission.

38.     Plaintiff is the exclusive licensee of the BLUEY Trademarks. Bluey's United States Registrations for the BLUEY Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the BLUEY Trademarks, and are willfully infringing and intentionally using infringing and counterfeit versions of the BLUEY Trademarks. Defendants' willful, intentional and unauthorized use of the BLUEY Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Bluey Products among the general public.

39.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

40.     Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the BLUEY Trademarks.

41.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Bluey Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

42.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

43.     Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Bluey Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Unauthorized Bluey Products by Plaintiff.

20

44.     By using the BLUEY Trademarks in connection with the sale of Unauthorized Bluey Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Bluey Products.

45.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Bluey Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

46.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its Bluey brand.

**COUNT III**
**COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATION**
**(17 U.S.C. §§ 106 AND 501)**

47.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

48.     The Bluey Copyrighted Design constitutes an original work and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

49.     Plaintiff is the exclusive licensee of the Bluey Copyrighted Design.  Bluey has complied with the registration requirements of 17 U.S.C. § 411(a) for the Bluey Copyrighted Design.  The Bluey Copyrighted Design is protected by Copyright Registration No. PA 2-308-864 which was duly issued to Bluey by the United States Copyright Office.  At all relevant times, Bluey has been and still is the owner of all rights, title, and interest in the Bluey Copyrighted Design, which has never been assigned, licensed, or otherwise transferred to Defendants.

50.     The Bluey Copyrighted Design is published on the Internet and available to Defendants online.  As such, Defendants had access to the Bluey Copyrighted Design via the Internet.

51.     Without authorization from Bluey, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced and/or made derivate works incorporating the Bluey Copyrighted Design on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Bluey Products.  Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Bluey Copyrighted Design. Such conduct infringes and continues to infringe the Bluey Copyrighted Design in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

52.     Defendants reap the benefits of the unauthorized copying and distribution of the Bluey Copyrighted Design in the form of revenue and other profits that are driven by the sale of Unauthorized Bluey Products.

53.     Defendants have unlawfully appropriated Bluey's protectable expression by taking material of substance and value and creating Unauthorized Bluey Products that capture the total concept and feel of the Bluey Copyrighted Design.

54.     On information and belief, the Defendants' infringement has been willful, intentional, and purposeful, and in disregard of and with indifference to, Plaintiff's rights.

55.     The Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

56.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502,

Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of the Bluey Copyrighted Design.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the BLUEY Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Bluey Product or is not authorized by Plaintiff to be sold in connection with the BLUEY Trademarks;

   b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Bluey Copyrighted Design in any manner without the express authorization of Plaintiff;

   c. passing off, inducing, or enabling others to sell or pass off any product as a genuine Bluey Product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the BLUEY Trademarks and/or the Bluey Copyrighted Design;

   d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Bluey Products are those sold under the authorization, control or

23

supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

e. further infringing the BLUEY Trademarks and/or the Bluey Copyrighted Design and damaging Plaintiff's goodwill; and

f. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Bluey's trademarks, including the BLUEY Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the Bluey Copyrighted Design;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Walmart, Wish.com, and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the BLUEY Trademarks and/or which bear the Bluey Copyrighted Design;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the BLUEY Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the BLUEY Trademarks;

5)  As a direct and proximate result of Defendants' infringement of the Bluey Copyrighted Design, Plaintiff is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6)  Alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7)  Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to7 U.S.C. § 505 and 17 U.S.C. § 1117(a); and

8)  Award any and all other relief that this Court deems just and proper.

Dated this 26th day of May 2022.          Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Isaku M. Begert
Justin T. Joseph
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
ibegert@gbc.law
jjoseph@gbc.law

*Counsel for Plaintiff BBC Studios Distribution Ltd*